**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------

TEAM FIRST CONSULTING, LLC and     :
HOWARD BERGER,     :
    :
               Plaintiffs,     :         Civ. No. 07-311 (DRD)
    :
        v.     :
    :
JOHN HANGLITER a/k/a DOUG     :         **O P I N I O N**
HANGLITER,     :
    :
              Defendant.     :
    :

-------------------------------------------------------

Brian D. Spector, Esq.
SPECTOR & EHRENWORTH, P.C.
30 Columbia Turnpike
Florham Park, New Jersey 07932

*Attorneys for Plaintiffs Team First Consulting, LLC and Howard Berger*


Steven C. Feinstein, Esq.
ZENSTEIN, GALLANT & PARLOW, P.C.
One Penn Center, Suite 1270
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103

*Attorneys for Defendant John Hangliter a/k/a Doug Hangliter*

**DEBEVOISE, Senior District Judge**


## I.  PROCEDURAL HISTORY


Plaintiffs, Team First Consulting, LLC ("Team First") and Howard Berger ("Berger")

1

(collectively, "Plaintiffs") filed the complaint in this action against defendant John Hangliter a/k/a Doug Hangliter ("Defendant" or "Hangliter") on January 19, 2007 (the "Complaint").  In the Complaint, there appear the following counts: (1) Count One- tortious interference with contractual relationship; (2) Count Two- tortious interference with prospective economic relations; (3) Count Three- defamation; (4) Count Four- breach of contract; (5) Count Five- unfair competition; (6) Count Six- promissory estoppel; (7) Count Seven- unjust enrichment; (8) Count Eight- preliminary and permanent injunctive relief.  Plaintiffs allege that this court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  Defendants now move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and 12(b)(3) for improper venue.  For the reasons stated below, Defendant's motion will be granted.

## II.  BACKGROUND

The Complaint alleges the following.  Team First, a software and information technology consulting firm, is a Delaware limited liability company with its principal place of business in Denville, New Jersey.  (Compl. ¶ 1).  Berger is a natural person and New Jersey resident with an office at the same Denville, New Jersey address.  (Id. at ¶ 2).  At all times relevant to this action, Berger was the managing member of Team First.  (Id.).  Defendant is a natural person and resident of Pennsylvania.  (Id. at ¶ 3).

Since approximately January 2004, SRA America, Inc. ("SRA") has retained Team First to provide consulting services or consulting placements to SRA's clients.  (Id. at ¶ 5).  Prior to September 22, 2006, Team First entered into an arrangement with SRA for the provision of information technology consulting services for SRA's client, Aisin USA Mfg., Inc. ("Aisin"), on

the Aisin Instance Consolidation Design Project (the "Project")[1].  (Id. at ¶ 6).  Between

September 22, 2006 and September 24, 2006, Team First negotiated a contract with Defendant

pursuant to which Defendant agreed to work for Team First as a consultant on the Project from

September 25, 2006 through and after December 1, 2006.  (Id. at ¶ 7).  On or about September

24, 2006, Defendant orally agreed to the terms of a draft written contract and demanded certain

terms as to payment (the "Contract").  (Id. at ¶ 9).  The Contract provides in relevant part that:

> 2)  Each employee or sub contractor shall not for a period of twelve
> (12) months following their resignation or removal from the Firm, for
> themselves or as an agent or employee of any person, corporation or
> entity, engage in the practice of consulting services for;
>
>> i)  Any client of the Firm whom the employee or sub
>> contractor performed services as determined by the Firm's
>> Senior Management . . .
>
> 3)  Each employee or sub contractor shall not, at any time during their
> employment with the Firm and for twelve months after their
> resignation or removal from the Firm, whether for his/her own
> account, for the account of any person, directly or indirectly, endeavor
> to solicit away from the Firm or facilitate the solicitation away from
> the Firm any Client or Prospect of the Firm.
>
> 4) Each employee or sub contractor shall be required to give the Firm
> four (4) weeks notice in writing of their intention to resign from the
> project.

(Compl. Ex. 1).

Between September 24, 2006 and September 25, 2006, Defendant booked his

transportation to the Project work site.  (Id. at ¶ 10).  On September 25, 2006, Defendant notified

Team First that he was to arrive shortly in the vicinity of the Project's work site.  (Id. at ¶ 12).

On September 27, 2006, Defendant sent an e-mail to Team First indicating his satisfaction with

---

[1]The consulting services for the Project were to be completed in the state of Indiana.

3

the arrangements between the parties.  (Id. at ¶ 13).  In additional e-mails, Defendant

acknowledged certain obligations under the Contract and understood that Team First would

reimburse him for his airfare.  (Id. at ¶ 14; Ex. 4).  On September 30, 2006, Defendant e-mailed

Team First a statement of his hours worked, but did not provide an invoice or other request for

payment.  (Id. at ¶ 16; Ex. 5).  On October 4, 2006, Defendant e-mailed Team First, insisting on

one or more amendments to the Contract and giving Team First an ultimatum that Team First

agree to the amendments.  (Id. at ¶ 17; Ex. 6).

        In an October 5, 2006 e-mail, Defendant advised Team First there was no contract and

that he would be working directly for SRA.  (Id. at ¶ 19; Ex. 7).   Defendant gave no more than

two to three hours notice of his termination and thereafter worked directly for SRA from October

5, 2006 through December 1, 2006.  (Id. at ¶¶ 20-22).

        Plaintiffs also allege the following with respect to Defendant's alleged interference with

Team First's consultants.  On November, 30, 2006, Defendant e-mailed Ron Beck ("Beck"), a

consultant placed on the Project by Team First and with whom Team First had a contract, and

indicated that Beck would not be paid for the time that he worked.  (Id. at ¶¶ 23-24; Ex. 10).  In a

December 4, 2006 e-mail to Beck and another consultant, Christine Nelson ("Nelson"),

Defendant stated that he believed Beck and Nelson were still awaiting a late payment from Team

First, that he had a very bad experience with Team First's business practice, that he did not

believe that Team first would pay in a timely manner, and advised Beck and Nelson to contact

him to aid in any litigation Beck and Nelson might pursue.  (Id. at ¶¶ 25-26; Ex. 9).

        On December 5, 2006, Nelson notified Team First that she intended to cease working for

Team First on the Project.  (Id. at ¶ 29).  Plaintiffs claim that this resulted from Defendant's interference with her relationship with Team First.  (Id. at ¶ 31).  In an e-mail dated January 3, 2007, from Beck to Team First, Beck indicated that during the course of the Project, Defendant recommended that Beck and Nelson inform SRA if they have not been paid by Team First to arrange for pay directly from SRA and that they pursue contracts directly with SRA and Aisin. (Id. at ¶¶ 32-33; Ex. 14).  Plaintiffs claim that on November 22, 2006, Beck was terminated from his position on the Project because Defendant interfered with the relationship between Team First and SRA.  (Id. at ¶ 39).  Plaintiffs allege that Defendant's statements to Beck and Nelson regarding Team First were false and tended to denigrate Team First's reputation.   (Id. at ¶ 38).

Finally, with respect to their defamation claim, Plaintiffs allege that Defendant has made false statements in writing and orally to one or more persons other than Berger concerning Berger's professional background and experience.  (Id. at ¶¶ 40-41; Ex. 16).  Plaintiffs also claim that Defendant took extreme and malicious measures to sabotage Team First's relationships with at least one client and one or more consultants.  (Id. at ¶ 42).

### III.  DISCUSSION

#### A.    Standard of Review

##### 1. Venue

"The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" Cottman Transmissions Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994).  The statutory language of 28 U.S.C. § 1391 requires that the events or omissions be substantial.  Id.  "Events or omissions

that might only have some tangential connection with the dispute in litigation are not enough. Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." Id.  On a motion to dismiss for improper venue, it is Defendant's burden of showing that venue is improper.  Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982).

### 2. Personal Jurisdiction

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004). Under New Jersey's long-arm statute, jurisdiction is coextensive with the due process requirements of the United States Constitution.  Id.  "Personal jurisdiction under the Due Process Clause depends upon 'the relationship among the defendant, the forum, and the litigation.'" IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).

> Physical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant.  Instead, the plaintiff must show that the defendant has purposefully directed its activities toward the residents of the forum state, or otherwise 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'  Where . . . the plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum, the court is said to exercise 'specific jurisdiction.'  In order for specific jurisdiction to be properly exercised under the Due Process Clause, the plaintiff must satisfy a two-part test.  First, the plaintiff must show that the defendant has constitutionally sufficient 'minimum contacts' with the forum.  Second, for jurisdiction to be exercised the court must determine, in its discretion, 'that to do so would comport with

6

"traditional motions of fair play and substantial justice.'"[2]

Id. (citations omitted).

On a motion to dismiss for lack of personal jurisdiction, it is plaintiff's burden to establish the court's jurisdiction over a defendant.  Miller Yacht Sales, 384 F.3d at 97. "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  Id.

"[B]ecause there are different considerations in analyzing jurisdiction over contract claims and over certain tort claims," the court will conduct a claim-specific analysis.  Remick v. Manfredy, 238 F.3d 248, 255-56 (3d Cir. 2001).

**B.     The Contract Claims and Personal Jurisdiction**

Plaintiffs allege three claims relating to the alleged Contract in the Complaint: (1) breach of contract; (2) promissory estoppel; and (3) unjust enrichment.  In determining personal jurisdiction with respect to a breach of contract claim, the court "must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing.  Remick, 238 F.3d at 256.

Defendant claims that the Complaint does not make any specific averments to support a finding of personal jurisdiction over the Defendant.  (Def.'s Br. 1).  Additionally, Defendant contends that: (1) he does not reside in New Jersey; (2) does not work in New Jersey; and (3) his

_____

[2]Because Plaintiffs do not argue that the court has general jurisdiction, the court's analysis will be confined to court's exercise of specific jurisdiction.

business contacts in New Jersey are limited to one consultant job that was completed in 2005. (Id.).

Plaintiffs contend that the court has jurisdiction over Defendant because Defendant purposefully directed his activities at residents of New Jersey.  In support of their motion, Plaintiffs rely on Miller Yacht Sales and Remick.

In Remick, plaintiff, an attorney licensed to practice in Pennsylvania, brought an action against several out-of-state individual defendants and a law firm alleging breach of contract, tortious interference with contract, misappropriation of image and likeness, civil conspiracy, and defamation.  In the complaint, Remick alleged that defendant Manfredy, a client of Remick's, sought him out by placing a telephone call to Remick's office in Philadelphia.  Id. at 256.  The phone call resulted in a fee agreement between Remick and Manfredy, which Remick signed in, and Manfredy returned to, Pennsylvania.  Id.  In addition, at least one payment was sent to Remick to his Philadelphia office, most of the services performed by Remick were conducted at the Philadelphia office, and there were repeated "informational communications" during the course of the contractual relationship between Manfredy and Remick at his Philadelphia office, including, Manfredy's termination letter.  Id.  The court found that Remick's contract claim was comparable to those claims distinguished in Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147 (3d Cir. 1996) and held that the district court had personal jurisdiction over Manfredy for the breach of contract claim.  Id. at 257.  The court found that the "facts as a whole involved more entangling contacts than the mere 'informational communications' at issue in Vetrotex."  Id. at 256.

In Vetrotex, plaintiff, Vetrotex, a Pennsylvania corporation,  solicited defendant, Conglas, a California corporation, to obtain a supply agreement by telephone and by personal visits to Conglas's headquarters in California.  Id. at 151.  Conglas did not solicit the supply agreement, and no Conglas personnel ever visited Pennsylvania.  Id.  Additionally, the agreement was signed and negotiated in California.  Id.  The court found that the only contacts that Conglas had with Pennsylvania consisted of phone calls and letters written to Vetrotex in Pennsylvania.  The court held that "informational communications in furtherance of [a contract between a resident and a nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant]."  Id. at 152 (alteration in original).  The court stated:

> The instant case is distinguishable from other cases where jurisdiction over a nonresident defendant has been premised largely on the defendant's contract with a resident of the forum state.  For instance, this is not a case where the defendant solicited the contract or initiated the business relationship leading up to the contract.  Nor is this the case where the defendant sent any payments to the plaintiff in the forum state, or where the defendant engaged in extensive post-sale contacts with the plaintiff in the forum state.

Id. at 152-53.

In the present case, the court finds that, as in Vetrotex,  the facts as alleged in the Complaint involve nothing more than informational communications in furtherance of a contract. Here, Plaintiffs allege the following with respect to the Contract: (1) between September 22, 2006 and September 24, 2006, Team First negotiated a contract with Defendant; (2) on or about September 24, 2006, Defendant orally agreed to the terms of a draft written contract and demanded certain terms as to payment; (3) Between September 24, 2006 and September 25,

9

2006, Defendant booked his transportation to the Project work site; (4) On September 25, 2006, Defendant notified Team First that he was to arrive shortly in the vicinity of the Project's work site; (5) on September 27, 2006, Defendant sent an e-mail to Team First indicating his satisfaction with the arrangements between the parties, and in additional e-mails, acknowledged certain obligations under the Contract and understood that Team First would reimburse him for his airfare; (6) on September 30, 2006, Defendant e-mailed Team First a statement of his hours worked, but did not provide an invoice or other request for payment; (7) On October 4, 2006, Defendant e-mailed Team First, insisting on one or more amendments to the Contract and giving Team First an ultimatum that Team First agree to the amendments; and (8) In an October 5, 2006 e-mail, Defendant advised Team First there was no contract and that he would be working directly for SRA.

Additionally, the facts of the present case are unlike those distinguished in <u>Vetrotex</u> and relied on by the Court in <u>Remick</u>.  Here, there are no allegations that: (1) the defendant solicited the contract or initiated the business relationship leading up to the contract; (2) the defendant sent anything other than communications via e-mail to the forum state; or (3) the defendant engaged in extensive post-sale contacts with the Plaintiffs in the forum state.  Rather, the Complaint alleges only that Plaintiffs and Defendants engaged in communications in furtherance of a contract.

Because nothing in the Complaint indicates that anything other than communications related to the alleged contract were sent to and from New Jersey, the court finds that it does not have personal jurisdiction over Plaintiffs' contract claims.

10

**C.**     **The Intentional Tort Claims and Personal Jurisdiction**

_____Plaintiffs allege four intentional torts in the Complaint: (1) tortious interference with contractual relationship; (2) tortious interference with prospective economic relations; (3) unfair competition; and (4) defamation.  "[A]n intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied."  IMO Indus., 155 F.3d at 260.  Under the "effects test" set forth in Calder v. Jones, 465 U.S. 783 (1984),  "a court may exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum."  155 F.3d at 261.  The "effects test" requires that the plaintiff establish:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Id. at 265-66.  However, "[s]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement."  Id. at 265.

Defendant claims that the Complaint does not make any specific averments to support a finding of personal jurisdiction over the Defendant.  (Def.'s Br. 1).  Additionally, Defendant contends that: (1) he does not reside in New Jersey; (2) does not work in New Jersey; and (3) his

11

business contacts in New Jersey are limited to one consultant job that was completed in 2005. (Id.).

Plaintiffs contend that the court has jurisdiction over Defendant because the effects of Defendant's tortious conduct were chiefly felt in New Jersey.  Relying on the "effects test," Plaintiffs argue that: (1) Defendant committed intentional torts; (2) the brunt of the harm was felt by Plaintiffs in New Jersey such that New Jersey was the focal point of the harm suffered; and (3) Defendant directed his communications to Plaintiffs with an understanding that Plaintiffs would receive those communications in New Jersey and that Defendant's defamatory statements about Berger were most likely delivered to Gerry Gress ("Gress"), an employee of Team First, while he was in New Jersey.  (Pl.s' Br. 9).

In Calder, respondent, an entertainer who lives and works in California, brought an action in California, claiming that she had been libeled in an article written by petitioners in Florida and published in the National Enquirer, a magazine having its largest circulation in California.  The Court held that California had personal jurisdiction over the petitioners because the story concerned the California activities of a California resident whose career was centered in California, the article was drawn from California sources, and the brunt of the harm was suffered in California.  465 U.S. at 788-89.  The Court concluded that jurisdiction was proper in California based on the "effects" of petitioners Florida conduct in California.

In Remick, plaintiff, in addition to his contractual claims, also alleged several intentional torts.  Among them were claims for defamation and tortious interference.  Remick's defamation claim arose out of two letters, both sent to Remick with no copies showing any other

12

Pennsylvania recipient.  238 F.3d at 257.  In an affidavit, Remick stated that the letters were reviewed by his daughter and an office secretary while sitting on the office fax machine.  The Court, while finding that Remick had satisfied the first two parts of the three-part IMO Industries test, held that Remick failed to meet the last requirement because there was "no indication that the letter was targeted at them or at anyone in Pennsylvania other than Remick."  Id. at 259.  Cf. Calder, 465 U.S. at 785 (finding that 600,000 copies of National Enquirer regularly sold in California).

As to Remick's tortious interference claim, Remick alleged that Manfredy and another defendant, Brown, "'set[ ] Remick up to fail in the negotiations over the Azumah Nelson fight and . . . publish[ed] and disseminat[ed] false and defamatory information about Remick's skill and ability' with the intent 'to interfere[ ] and cause harm' to Remick's contract with Manfredy." Id. at 260 (alteration in original).  The Court found that "[a]lbeit a tort, it is necessarily related to the contract which he had entered into with Manfredy and which is the subject of the alleged tortious interference."  Id.  The court found that because it was alleged that Remick conducted the contractual services for Manfredy in Philadelphia, "the effects of any intentional conduct by the defendants designed to interfere with Remick's contractual relations with Manfredy necessarily would have been felt in Pennsylvania."  Id.  Thus, the Court found that the district court erred in holding that it lacked specific jurisdiction over the individual defendants with respect to Remick's claim for tortious interference.  Id.

In the present case, Plaintiffs' claim for defamation is based on the allegation that Defendant made false statements in writing and orally to one or more persons other than Berger concerning Berger's professional background and experience.  (Compl. ¶¶ 40-41).  Plaintiffs also

13

allege that Defendant made false statements to two consultants of Team First concerning the financial status of Team First, the honesty and integrity of Team First and Team First's commitments to its consultants.  (Id. at ¶ 57).  Finally, Plaintiffs contend that Defendant made false statements to a client of Team First concerning the capabilities of one or more of Team First's consultants, the financial status of Team First, the honesty and integrity of Team First, and Team First's commitments to customer satisfaction.  (Id. at ¶ 58).

Plaintiffs rely on several  e-mails  that were attached to the Complaint and sent from Defendant.  However, only one of the e-mails is claimed to have been sent to Berger and by carbon copy to another Team First employee, Gress in New Jersey.

Defamation is an intentional tort, and in light of the fact that Team first is located in New Jersey, Plaintiffs may reasonably contend that they suffered the brunt of their harm in New Jersey.  However, there are no allegations that any false statements, other than one allegedly defamatory e-mail, were directed to Plaintiffs in New Jersey.  Therefore, the court does not find that defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.  Thus, this court does not have personal jurisdiction over Plaintiffs' defamation claim.

Plaintiffs' claim for tortious interference alleges that Defendant's interference with Team First's consultants, Nelson and Beck, resulted in Nelson's election to cease working for Team First on the Project and Beck's termination from his position on the Project.  Additionally, Plaintiffs allege Defendant lured away SRA, causing economic damage to Plaintiffs.  However, unlike the contractual services in Remick, none of the consulting services for the Project were to

14

be conducted in New Jersey, but rather were to be completed in Indiana.  Thus, although the

Plaintiffs would have felt the brunt of the harm in New Jersey, the court does not find that

defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be

the focal point of the tortious activity.

Having found that dismissal is required because this court lacks personal jurisdiction over

the defendant, the court need not, and will not, analyze whether venue is proper.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss will be granted.  The court

will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:          April 27, 2007

15